**Robert CONROY, Plaintiff–Appellant,**

v.

**REEBOK INTERNATIONAL, LTD., Defendant–Appellee.**

No. 93–1281.

United States Court of Appeals, Federal Circuit.

Jan. 4, 1994.

Rehearing and Suggestion for Rehearing In Banc Denied Feb. 15, 1994.

Robert J. Emery, Buffalo Grove, IL, argued for plaintiff-appellant.

David K.S. Cornwell, Sterne, Kessler, Goldstein & Fox, Washington, DC, argued for defendant-appellee. With him on the brief were Tracy-Gene G. Durkin and William C. Allison, V.

Before CLEVENGER, Circuit Judge, BENNETT, Senior Circuit Judge, and SCHALL, Circuit Judge.

CLEVENGER, Circuit Judge.

Robert Conroy appeals the February 5, 1993 judgment of the United States District Court for the District of Massachusetts granting Reebok International, Ltd. (Reebok)'s motion for summary judgment of noninfringement of U.S. Patent No. 3,854,228 (the Conroy patent). *Conroy v. Reebok Int'l Ltd.*, 27 USPQ2d 1794, 1993 WL 405479 (D.Mass.1993). We vacate and remand.

## I

The Conroy patent, entitled "Athletic Armor and Inflatable Bag Assembly," claims air inflatable bladders used in athletic footgear to cushion and protect the feet of the wearer. The accused device is a basketball shoe, which incorporates air inflatable bladders, that Reebok manufactures and sells under the trademark THE PUMP.

On September 18, 1991, Conroy filed suit in the U.S. District Court for the Central District of Illinois alleging infringement of the Conroy patent by Reebok. Granting Reebok's motion for change of venue, the district court transferred the case to the U.S. District Court for the District of Massachusetts on February 24, 1992. On July 2, 1992, Reebok filed a motion for summary judgment of noninfringement and requested the imposition of sanctions. Before expiration of the 14-day period in which Mr. Conroy had to file his opposition to Reebok's motion pursuant to D.Mass.R. 7.1(A)(2), the district court granted motions by Mr. Conroy's attorneys to withdraw from the case in a July 13, 1992 telephone conference. At that time, the district court also extended the due date for Mr. Conroy to file his opposition, providing him with additional time in which to attempt to secure new counsel. Unable to do so, however, Mr. Conroy filed his opposition *pro se* on September 18, 1992. Based solely on Reebok's motion and Mr. Conroy's opposition, the district court entered summary judgment for Reebok of noninfringement of the Conroy patent and denied Reebok's request for sanctions. The only issue on appeal is the propriety of the district court's summary judgment of noninfringement.

## II

The determination of infringement requires a two-step analysis: (1) a proper construction of the claim to determine its scope and meaning, and (2) a comparison of the properly construed claim to the accused device or process. *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 3 F.3d 404, 407, 27 USPQ2d 1836, 1839 (Fed.Cir.1993). Claim construction is not an issue in this

case. With regard to the second step of the infringement analysis, the patentee must prove that the accused device embodies every limitation in the claim, either literally or by a substantial equivalent. *Id.,* 3 F.3d at 407, 27 USPQ2d at 1839. Moreover, the patentee has the burden of proving infringement by a preponderance of the evidence. *Morton Int'l, Inc. v. Cardinal Chem. Co.,* 5 F.3d 1464, 1468, 28 USPQ2d 1190, 1193 (Fed. Cir.1993).

The Conroy patent contains two independent claims, Claim 1 and Claim 4. Reebok does not deny that its accused PUMP shoe contains all but one of the limitations in the independent claims, basing its motion for summary judgment of noninfringement only on the last claim limitation in both Claim 1 and Claim 4. The only limitation at issue in Claim 1 recites:

> a linking member connected at the opposite ends to the lower edge of the side foot portions so that the linking member fits against the bottom of the heel, whereby the inflatable member assumes said preset arched configuration.

The only limitation at issue in Claim 4 similarly recites:

> a linking member of tubular configuration joining said spaced side foot portions to assume said preset arched configuration, said linking member of tubular configuration communicating with the air chamber formed by the side walls.

Figure 1 shows an embodiment of the Conroy air inflatable bladder, depicting the linking member as structure 72.

Figure 1

The facts regarding the structure of the accused PUMP shoe are undisputed. The air inflatable bladder of the Reebok shoe covers the top and sides of the wearer's foot and has two pairs of downward extending tabs on opposite sides of the foot that attach underneath the insole of the shoe to hold the bladder in place. Figure 2 shows the Reebok air inflatable bladder, depicting one of the accused tabs as structure 122.

Figure 2

The parties agree that the accused PUMP shoe contains no structure which would meet literally the linking member limitation of either Claim 1 or Claim 4. While Mr. Conroy concedes that the Reebok shoe does not literally infringe the claims of his patent, he contends that the Reebok tabs constitute equivalents to the claimed linking member. Mr. Conroy thus seeks to establish infringement only under the doctrine of equivalents. Under this doctrine, an accused device infringes if it performs substantially the same function in substantially the same way to obtain substantially the same result as the claimed invention. *Carroll Touch,* 3 F.3d at 409, 27 USPQ2d at 1841 (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950)). The district court, however, never conducted a function-way-result equivalence analysis as set forth in *Graver Tank.* In granting Reebok's motion for summary judgment of noninfringement, the district court held that Mr. Conroy "present[ed] no evidence supporting a finding of infringement under the doctrine of equivalents." *Conroy,* 1993 WL 405479, 27 USPQ2d at 1797.

Furthermore, the district court held that "[e]ven assuming he had, [Mr. Conroy] cannot assert the range of equivalents necessary to prove infringement of his patent." *Id.* To reach this second alternative holding, the district court examined U.S. Patent No. 3,685,176 (the Rudy patent), entitled "Inflatable Article of Footwear," which issued on August 22, 1972 to Marion F. Rudy. Although the Rudy patent was not before the examiner as prior art during the prosecution of the Conroy patent application, Mr. Conroy does not contest its prior art effect here. In its specification, the Rudy patent states:

[i]f desired, the side portions 32 of the bladder may be disposed under the side margins 33 of the insole and suitably glued or otherwise adhered thereto. col. 5, 11. 10–12.

Figure 3 shows the Rudy air inflatable bladder, depicting the side portions relevant to this case as structure 32.

Figure 3

Based entirely on the drawings and the side portions disclosure in the specification, the district court found that the Rudy patent disclosed "tabs ('side [portions]') attached to the sole of the boot [claimed in the Rudy patent]." *Conroy,* 1993 WL 405479, 27 USPQ2d at 1797. Relying on its finding that the tabs in the accused PUMP shoe were disclosed in the prior art, the district court concluded that Mr. Conroy "[could] not assert [a] range of equivalents, *as a matter of law*" that would encompass the tabs in the Reebok shoe. *Id.* (emphasis added) (citing *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,* 904 F.2d 677, 14 USPQ2d 1942 (Fed.Cir.), *cert. denied,* 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990); *Key Mfg. Group, Inc. v. Microdot, Inc.,* 925 F.2d 1444, 17 USPQ2d 1806 (Fed.Cir.1991)). The district court thus entered summary judgment of noninfringement for Reebok.

### III

■ This court reviews *de novo* a district court's grant of summary judgment. *International Visual Corp. v. Crown Metal Mfg. Co.,* 991 F.2d 768, 770, 26 USPQ2d 1588, 1590 (Fed.Cir.1993). A summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The grant of summary judgment is appropriate in a patent case where the standards set forth in Rule 56(c) are satisfied. *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.,* 984 F.2d 1182, 1190, 25 USPQ2d 1561, 1567 (Fed.Cir. 1993). The moving party bears the burden of demonstrating the absence of genuine issues of material fact. *Copelands' Enters. v. CNV, Inc.,* 945 F.2d 1563, 1565, 20 USPQ2d 1295, 1297–98 (Fed.Cir.1991). The moving party, however, need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing the district court that there is an absence of evidence to support the nonmoving party's case. *Id.,* 945 F.2d at 1565, 20 USPQ2d at 1298 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)).

### A

Although Mr. Conroy's complaint alleges infringement generally, Reebok's motion for

summary judgment separately addresses the issues of both literal infringement and infringement under the doctrine of equivalents. On the issue of literal infringement, Reebok satisfies its burden as the moving party in a motion for summary judgment by demonstrating the absence of all genuine issues of material fact. Reebok's motion states that its accused PUMP shoe does not literally infringe the claims of the Conroy patent because "[n]o shoes made, used or sold by Reebok have ever had a linking member as required by the Conroy patent." Mem. in Supp.Def.'s Mot.Summ.J. at 13–15; Def.'s Concise Statement of Material Facts at 2. Reebok also introduces into the record, *inter alia*, the Conroy patent, the Rudy patent and declarations as to the structure of the accused PUMP shoe. Exs. A, C, E and F in Supp.Def.'s Mot.Summ.J. Furthermore, Mr. Conroy does not contend that the Reebok shoe literally infringes the claims of his patent. We thus hold that the district court correctly granted Reebok's motion for summary judgment on the issue of literal infringement.

### B

On the issue of infringement under the doctrine of equivalents, however, Reebok fails to satisfy its burden as the moving party on a motion for summary judgment. Reebok argues that "[t]he doctrine of equivalents is simply not applicable to the present case" because "[e]ven where [the function-way-result] test [of *Graver Tank*] is met, ... 'there can be no infringement if the asserted scope of equivalency of what is literally covered would encompass the prior art.'" Mem. in Supp.Def.'s Mot.Summ.J. at 15 (citing *Wilson*, 904 F.2d at 683, 14 USPQ2d at 1948). Essentially, Reebok's only contention on the issue of infringement under the doctrine of equivalents is that summary judgment is appropriate because Mr. Conroy is precluded here, as a matter of law under *Wilson*, from establishing infringement under the doctrine of equivalents, a matter on which Mr. Conroy has the burden of proof at trial. The district court's holding adopts Reebok's argument that the prior art Rudy patent disclosed tabs identical to those in the accused PUMP shoe, and that *Wilson* thus precludes Mr. Conroy

from asserting a range of equivalents that would encompass the tabs in the Reebok shoe. For the following reasons, we hold that the district court misapprehended *Wilson* and improperly concluded that Mr. Conroy was precluded as a matter of law from asserting a range of equivalents that would encompass the tabs in the Reebok shoe.

In *Wilson*, this court reaffirmed the long-standing principle that the prior art restricts the scope of equivalency that the party alleging infringement under the doctrine of equivalents can assert. *See, e.g., Wilson*, 904 F.2d at 684, 14 USPQ2d at 1948; *Ryco, Inc. v. Ag–Bag Corp.*, 857 F.2d 1418, 1426, 8 USPQ2d 1323, 1330 (Fed.Cir.1988); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 870, 228 USPQ 90, 96 (Fed.Cir.1985). The ingenuity of the *Wilson* opinion rests with its creation of an analytical framework, in the form of a hypothetical claim analysis, to determine the extent to which the prior art restricts the application of the doctrine of equivalents. *Wilson*, 904 F.2d at 683–85, 14 USPQ2d at 1948 (reciting a hypothetical claim approach, which postulates a hypothetical patent claim sufficient in scope to cover literally the accused device, followed by the determination of whether that hypothetical claim as a whole would be patentable over the prior art).

In this case, rather than perform a hypothetical claim analysis, the district court directly compared the prior art with a single element (the tabs 122) of the accused device in an attempt to determine the extent to which prior art limits the application of the doctrine of equivalents. While the hypothetical claim analysis is a useful methodology because the clear step-by-step process facilitates appellate review, nothing in *Wilson* mandates its use as the only means for determining the extent to which the prior art restricts the scope of equivalency that the party alleging infringement under the doctrine of equivalents can assert. *See Wilson*, 904 F.2d at 684, 14 USPQ2d at 1948 (stating that the hypothetical claim analysis "permits a more precise analysis than determining whether an *accused product* (which has no claim limitations on which to focus) would

have been obvious in view of the prior art." (emphasis in original)); *International Visual*, 991 F.2d at 772, 26 USPQ2d at 1591 (referring to the hypothetical claim analysis as "an *optional* way of evaluating whether prior art limits the application of the doctrine of equivalents." (emphasis added)). Thus, the district court's decision not to conduct a hypothetical claim analysis was not itself improper.

▆▆▆ Nonetheless, irrespective of the type of analysis chosen to determine the extent to which the prior art limits the application of the doctrine of equivalents, the fundamental purpose of all such evaluations must be to prevent the patentee from "obtain[ing], under the doctrine of equivalents, coverage which [the patentee] could not lawfully have obtained from the [Patent and Trademark Office] by literal claims." *Wilson*, 904 F.2d at 684, 14 USPQ2d at 1948. In purporting to follow *Wilson*, however, the district court here concluded that the mere existence of an element in the prior art automatically precludes Mr. Conroy from asserting a scope of equivalency sufficient to encompass the corresponding element in the accused device. In so doing, the district court applied an improper test of permissible patent scope under the doctrine of equivalents, and thus contravened the rationale of *Wilson*. *See Grain Processing Corp. v. American Maize–Prods. Co.*, 840 F.2d 902, 907, 5 USPQ2d 1788, 1793 (Fed.Cir.1988) ("[T]he [obviousness] inquiry is not whether each element existed in the prior art, but whether the prior art made obvious the invention as a whole for which patentability is claimed.'") (quoting *Hartness Int'l, Inc. v. Simplimatic Eng'g Co.*, 819 F.2d 1100, 1108, 2 USPQ2d 1826, 1832 (Fed.Cir.1987)); *Wilson*, 904 F.2d at 684, 14 USPQ2d at 1948 (requiring a proper evaluation of the prior art—i.e., a scope determination of "what an inventor could have claimed"—to establish "the range of permissible equivalents of a claim."). The district court's application of an improper scope test, when directly comparing the Rudy patent with the accused Reebok tabs, results in an overbroad restriction by the prior art on the application of the doctrine of equivalents by Mr. Conroy. While a court may employ a means other than the hypothetical claim analysis set forth in *Wilson* to determine the extent to which the prior art limits the application of the doctrine of equivalents, a court also must apply standards of patentability consistent with our jurisprudence regarding anticipation and obviousness. We therefore hold that the district court erred in concluding, without a proper evaluation of the permissible scope of the Conroy patent in view of the Rudy patent, that Mr. Conroy could not assert a range of equivalents of the linking member limitations which would encompass the Reebok tabs.

## C

▆▆▆ In any event, even if the district court's faulty method of determining the extent to which prior art limits the application of the doctrine of equivalents could be excused, the district court erred in making the factual finding that the Rudy patent's side portions (Figure 3, structure 32) are tabs equivalent to those found in the accused PUMP shoe (Figure 2, structure 122). By making such a factual finding, the district court improperly resolved a genuine issue of material fact. *Pfaff v. Wells Elecs., Inc.*, 5 F.3d 514, 519, 28 USPQ2d 1119, 1123 (Fed. Cir.1993) ("'[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). The existence of a genuine issue of material fact precludes summary judgment for Reebok as a matter of law. Fed.R.Civ.P. 56(c).

## IV

▆▆▆ The district court also granted Reebok's motion for summary judgment of noninfringement under the doctrine of equivalents based upon its alternative holding that Mr. Conroy "present[ed] no evidence supporting a finding of infringement under the doctrine of equivalents." *Conroy*, 1993 WL 405479, 27 USPQ2d at 1797. As the nonmoving party on a motion for summary judg-

ment, however, Mr. Conroy does more than "rest upon the mere allegations or denials of [Reebok's] pleading." Fed.R.Civ.P. 56(e). Mr. Conroy also does "more than merely raise some doubt as to the existence of a fact." *Copelands'*, 945 F.2d at 1566, 20 USPQ2d at 1298. In both his opposition to Reebok's motion for summary judgment and the September 29, 1992 telephone hearing before the district court on Reebok's motion, Mr. Conroy raised the factual issue of equivalence by asserting that the tabs in the accused PUMP shoe performed the same function as the claimed linking member. Pl.'s Opp. to Def.'s Mot.Summ.J. at 4; Tr. of Hr'g on Def.'s Mot.Summ.J. at 12–14. In doing so, Mr. Conroy relied on his patent and the structure of the Reebok shoe, evidence already of record. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (holding that the nonmoving party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment," but rather may rely on evidentiary materials "on file" to "designate 'specific facts showing that there is a genuine issue for trial.' "). The district court, however, failed to recognize or otherwise appreciate Mr. Conroy's statements *pro se* pointing to record evidence from which inferences could be reasonably drawn as to the equivalence of the Reebok tabs to the linking member limitation of the claims in suit. *Cf. Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1389, 21 USPQ2d 1383, 1387–88 (Fed.Cir.1992) (affirming district court's grant of summary judgment of noninfringement under the doctrine of equivalents where the nonmoving party produced no evidence of equivalency); *see Pfaff*, 5 F.3d at 517, 28 USPQ2d at 1122 (stating that all evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences should be drawn in favor of the nonmoving party). Furthermore, the district court granted summary judgment without ruling on Mr. Conroy's motion for leave to file additional papers in support of his opposition to summary judgment. We thus hold that the *district court incorrectly granted Reebok's motion for summary judgment of noninfringement under the doctrine of equivalents* based upon its erroneous ruling that Mr. Conroy pre-

sented no evidence supporting a finding of infringement under the doctrine of equivalents.

## V

For these reasons, Reebok fails to satisfy its burden as the moving party on a motion for summary judgment by neither producing evidence showing the absence of a genuine issue of material fact nor otherwise showing that it is entitled to summary judgment as a matter of law. Therefore, rejecting Reebok's contention that Mr. Conroy's appeal is frivolous, we vacate the district court's grant of Reebok's motion for summary judgment of noninfringement of the Conroy patent and remand for proceedings consistent with this opinion.

No costs.

*VACATED AND REMANDED.*