**UPJOHN COMPANY, Plaintiff,**

v.

**MOVA PHARMACEUTICAL CORP., Defendant.**

Civil No. 95–1378 (PG).

United States District Court, D. Puerto Rico.

Jan. 9, 1997.

Arturo Díaz–Angueira & Marta Quiñones-de-Torres, San Juan, PR, Gerald Sobel, New York City, Raymond G. Arner, William G. Jameson, & Anthony B. Portuese, The Upjohn Company, Kalamazoo, MI, for Plaintiff.

Allen R. Baum, Alexandria, VA, David C. Indiano–Vicic, Hato Rey, PR, James S. Rubin, West New York, NY, for Defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

### I. Background

Plaintiff Upjohn Company brought this patent infringement action against defendant Mova Pharmaceutical Corp. alleging that Mova infringed Upjohn's United States Patent No. 4,916,163 ("the '163 patent") on a drug used to treat diabetes. Before the Court is Mova's Motion for Summary Judgment that the accused product does not infringe the '163 patent.

### A. Procedural History

This suit arises out of an Abbreviated New Drug Application ("ANDA") Mova filed with the FDA seeking to manufacture and market a generic version of Upjohn's drug. Among other things, the ANDA requires a showing that the new drug is bioequivalent to a previously approved, listed drug. The ANDA also requires a certification that, in pertinent part, the patent claiming the listed drug "is invalid or will not be infringed by the manufacture, use, or sale of the new drug...." 21 U.S.C. § 355(j)(2)(A)(vii)(IV). An applicant who makes a certification pursuant to paragraph IV must give notice of the application to the owner of each patent in the certification, together with documents supporting the applicant's position. 21 U.S.C. § 355(j)(2)(B)(i)–(ii). Accordingly, on February 7, 1994, Mova notified Upjohn of its ANDA. Upjohn, in turn, filed this lawsuit seeking declaratory judgment, injunction, and damages.

### B. The Formulations

The formulation Upjohn manufactures contains two principal elements: micronized glyburide, which is the active ingredient, and spray-dried lactose, which is an excipient,[1] the latter being present in amounts of at least about 70% by weight. It also includes other excipients. The Mova formulation also contains micronized glyburide as the active ingredient, with 49% by weight spray-dried lactose and 46.3–49.1% "Pregelatinized Starch, NF (Corn)," another excipient.[2]

The invention Upjohn patented falls into the category of so-called "secondary" inventions, as opposed to "pioneer" inventions. As the term suggests, secondary inventions include combinations of old elements that produce new and useful results, as is the case with Upjohn's composition here. See Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950). Combinations of micronized glyburide and other excipients, as well as combinations of other anti-diabetic agents and spray-dried lactose in amounts up to almost 60% were present in the prior art. Upjohn's patent application was originally rejected by the Patent and Trademark Office ("PTO") because it was deemed obvious to one of ordinary skill in the art to use spray-dried lactose rather than regular lactose with micronized glyburide. Upjohn appealed and was able to overcome this rejection by demonstrating unexpected advantages in manufacturability by using spray-dried lactose instead of regular lactose.

### II. Discussion

Upjohn's major argument is that Mova's formulation infringes its patent under the "doctrine of equivalents." Upjohn also argues, however, that Mova's formulation literally infringes the '163 patent. The Court will consider the literal infringement argument first.

---

1. An excipient is an inactive ingredient that allows a drug to be produced in a form patients can use.

2. This excipient has also more or less interchangeably been referred to by the parties as pregelatinized or partially pregelatinized corn starch and as Starch 1500.

## A. Literal Infringement

 "Literal infringement exists when every limitation recited in the claim is found in the accused device...." *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1405 (Fed.Cir.1996). "If an express limitation is absent from the accused product, there can be no literal infringement as a matter of law." *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed.Cir.1994). The '163 patent claims "about not less tha[n]" 70% by weight spray-dried lactose, whereas Mova's formulation contains only 49% spray-dried lactose. Upjohn contends, however, that Mova's choice of 49% spray-dried lactose, combined with evidence that Mova chose that amount for no other purpose than to avoid Upjohn's patent, constitutes literal infringement of the '163 patent.

The Court does not agree that 49% can be considered to be literally "about" 70%, even assuming that this amount was chosen solely for the purpose of avoiding the '163 patent. Even in *Kolene Corp. v. Motor City Metal Treating, Inc.*, 440 F.2d 77 (6th Cir.1971), *cert. denied* 404 U.S. 886, 92 S.Ct. 203, 30 L.Ed.2d 169 (1971), on which Upjohn relies and which it characterizes as involving "variations similar to those here," the variation was 6–10%, as opposed to 21%—two to three times as much—here. The stretch in *Kolene* has been described as "modest" by the Federal Circuit. *See Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1562 (Fed.Cir.1994). The same cannot be said for the variation at issue here. Moreover, the Federal Circuit—the existence of which *Kolene* predates—has emphasized the importance of the public's ability to design around a competitor's product or process. *See Hilton Davis Chem. Co. v. Warner–Jenkinson Co., Inc.*, 62 F.3d 1512, 1520 (Fed.Cir.1995) (en banc), *cert. granted,* ——— U.S. ———, 116 S.Ct. 1014, 134 L.Ed.2d 95 (1996); *Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 277 (Fed. Cir.1985) (quoting *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir.1985)). These precedents counsel against stretching the literal meaning of the term "about" to include a full 21% variation, even (or perhaps especially) when chosen specifically to avoid a patent.

Because Mova's accused formulation, which is missing "about not less tha[n]" 70% spray-dried lactose, does not contain every limitation recited in the '163 patent, it cannot literally infringe the '163 patent. The Court therefore turns to the issue of infringement under the doctrine of equivalents.

## B. Infringement under the Doctrine of Equivalents

The essence of Upjohn's doctrine of equivalents claim is that the third component of Mova's formulation—the partially pregelatinized corn starch—is the equivalent of spray-dried lactose, and therefore the formulation infringes on Upjohn's patent. Equivalence is an issue of fact, *Hilton Davis,* 62 F.3d at 1527–28; however, for purposes of its Motion for Summary Judgment only, with the goal of eliminating all issues of fact, Mova concedes that its formulation is the equivalent of Upjohn's.

 Secondary inventions, like pioneer inventions, are protected by the doctrine of equivalents. *Graver Tank,* 339 U.S. at 608, 70 S.Ct. at 856. Although secondary inventions are entitled to a narrower range of equivalents than pioneer inventions, *id.,* the Court need not decide the range of equivalents available to Upjohn's invention, since Mova has conceded equivalence for the moment.

 This concession ordinarily would result in a finding of infringement. "[T]he substitution of an ingredient known to be an equivalent to that required by the claim presents a classic example for a finding of infringement under the doctrine of equivalents." *Corning Glass Works v. Sumitomo Elec. USA, Inc.,* 868 F.2d 1251, 1261 (Fed. Cir.1989). Mova, however, argues that the doctrine of equivalents is inapplicable for two reasons: first, that any attempt by Upjohn to construe its claim to cover Mova's formulation would ensnare the prior art, and second, that Upjohn dedicated Mova's formulation to the public in its patent and may not now reclaim it.[3]

3. Mova does not argue in its motion that the

patent is invalid because one of ordinary skill in

Much of Mova's discussion is devoted to demonstrating the importance to Upjohn's patent of the amount of spray-dried lactose— that is, at least 70%—which, Mova argues, cannot possibly be construed to include 49% without erasing a meaningful structural and functional limitation on which the public is entitled to rely. While the Court agrees that 49 is not 70, nor even "about" 70, this contention ultimately misses the point, since Upjohn's argument is that Mova's "Pregelatinized Starch, NF (Corn)" can substitute for spray-dried lactose, with the result that the *sum* of 49% spray-dried lactose and 46.3–49.1% Pregelatinized Starch, NF (Corn) yields 95.3–98.1% spray-dried lactose *or its equivalent*, an amount covered by the phrase "about not less than 70%."

### 1. The Prior Art

■ Prior art restricts the scope of equivalents a patentee may claim. *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 683 (Fed.Cir.1990). Mova relies on the preamble of the '163 patent and on patents containing over 50% spray-dried lactose to argue that the prior art precludes application of the doctrine of equivalents in this case.

### a. The Jepson Preamble

Mova first argues that Upjohn admitted Mova's formulation to be prior art through the preamble of its "Jepson-style" patent claim.[4] Upjohn's claim reads:

1. In [a] micronized glyburide anti-diabetic pharmaceutical composition, as a unit dose, containing one or more pharmaceutically acceptable excipients, the improvement which comprises:

spray-dried lactose as the preponderant excipient in said composition, being present therein at about not less tha[n] seventy percent (70%) by weight of the final composition.

Mova explains that this style of claim first recites the elements that are known, or prior

the art would have expected the advantages achieved by using spray-dried lactose.

4. The format of this type of claim is codified at 37 C.F.R. § 1.75(e).

art, in the preamble, followed by the standard phrase "the improvement which comprises," and then proceeds to recite the improvement that is claimed. Mova argues from this essentially that all combinations of micronized glyburide and pharmaceutically acceptable excipients other than spray-dried lactose in amounts above 70% by weight are admitted to be prior art.

■ The preamble of a Jepson claim is impliedly admitted to be prior art. *Sjolund v. Musland*, 847 F.2d 1573, 1577 (Fed.Cir. 1988). The Court does not agree, however, that Upjohn did anything more than admit that *certain* combinations of micronized glyburide and pharmaceutically acceptable excipients are in the prior art. There is no dispute that some combinations of micronized glyburide and pharmaceutically acceptable excipients are in the prior art. However, not every combination of micronized glyburide and pharmaceutically acceptable excipients is in the prior art. One cannot admit to be prior art that which is not in fact prior art. *See Reading & Bates Constr. Co. v. Baker Energy Resources Corp.*, 748 F.2d 645, 649–50 (Fed.Cir.1984) (holding that preamble alone was not admission that inventor's own prior work is prior art because "obviousness should not be based on an implied admission erroneously creating imaginary prior art," quoting *In re Ehrreich*, 590 F.2d 902, 910 (C.C.P.A.1979)). The patent specification supports this interpretation of the claim in that it acknowledges the existence of *certain* combinations and makes reference to the patents that disclose these combinations.[5] These references do not disclose Mova's particular formulation or even pregelatinized corn starch. Upjohn's Jepson preamble did not admit Mova's formulation to be prior art any more than it admitted its own claimed combination of micronized glyburide and 70% spray-dried lactose—also a known pharmaceutically acceptable excipient—to be prior art. Moreover, if one were impliedly to disclaim as prior art all other combinations of old elements simply by claiming one particu-

5. "Glyburide and certain micronized glyburide anti-diabetic pharmaceutical compositions are known. See the references cited above." (Mova Ex. 4, col. 1, ll. 40–43.)

lar combination of them, the doctrine of equivalents would never apply to a secondary invention.

### b. Patents Containing over 50% Spray–Dried Lactose

■ Mova also argues that to allow the scope of equivalents Upjohn claims would ensnare prior art patents containing over 50% spray-dried lactose. The preferred, although not mandatory, method of determining whether the prior art restricts the scope of equivalents is the hypothetical claims analysis set out in *Wilson*. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576–77 (Fed.Cir. 1994). The hypothetical claim is structured to be similar to the patentee's claims but broad enough to encompass literally the accused device. The court then determines whether the hypothetical claim would have been patentable over the prior art. *Id.* at 1576 (citing *Wilson*, 904 F.2d at 683–85). The fundamental purpose of the analysis is to prevent the patentee from getting coverage that could not lawfully have been obtained from the PTO by literal claims. *Id.* at 1577 (quoting *Wilson*, 904 F.2d at 684).

The hypothetical claim Mova postulates consists of two elements: 1) micronized glyburide as the active ingredient and 2) spray-dried lactose reduced from 70% to 49% by weight. Mova urges that this formulation would not have been patentable in light of the prior art, given that micronized glyburide was admitted as prior art, as was the use of over 49% spray-dried lactose (although not together). Thus, Mova argues, the hypothetical claim would have been obvious over the prior art and may not be claimed as an equivalent.

The inquiry is not whether each element existed in the prior art, but whether the prior art makes the invention as a whole obvious. *Id.* at 1577 (citing *Grain Processing Corp. v. Am. Maize–Prods. Co.*, 840 F.2d 902, 907 (Fed.Cir.1988) (quoting, in turn, *Hartness Int'l, Inc. v. Simplimatic Eng'g Co.*, 819 F.2d 1100, 1108 (Fed.Cir.1987))). This is especially significant in a situation involving a secondary invention consisting of old elements combined to produce new results. The hypothetical claim as set out by Mova does not answer the question of obviousness because what the "invention as a whole" will be depends on the elements used to fill in the other 50% or so of the composition. A third element that literally covers the accused product, that is, partially pregelatinized corn starch, would achieve the same unexpected new results as Upjohn's actual formulation and, consequently, the hypothetical would be patentable over the prior art. Thus, Mova seeks an overbroad restriction on the application of the doctrine of equivalents. *See Conroy*, 14 F.3d at 1577. The Court does not agree that the prior art cited precludes the application of the doctrine of equivalents in this case.

### 2. Dedication to the Public

Mova also argues that application of the doctrine of equivalents is precluded because Upjohn dedicated Mova's formulation to the public. Having surrendered it, Mova argues, Upjohn cannot now reclaim it in its infringement action.

■ "[S]ubject matter disclosed but not claimed in a patent application is dedicated to the public." *Maxwell v. J. Baker Inc.*, 86 F.3d 1098, 1106 (Fed.Cir.1996) (quoting *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562–63 (Fed.Cir.1991)). The '163 patent, however, nowhere discloses the precise formulation Mova uses. It does not explicitly state, for example, that pregelatinized corn starch may be used as an alternative to spray-dried lactose.[6] Mova relies instead on a part of the patent specification that discusses the use of other excipients in a typical formulation of its drug, including "corn starch" as a tablet disintegrant, in amounts from 0–30% by weight.

Besides stating that it did not disclose or dedicate anything—least of all Mova's formulation—to the public and that pregelatinized corn starch is disclosed nowhere in the patent specification, Upjohn responds that the

---

6. It differs in this respect from *Maxwell*, in which the patentee expressly disclosed the precise equivalent later claimed, in a sentence beginning, "Alternatively...." *Maxwell*, 86 F.3d at 1106.

other excipients mentioned in the '163 patent, unlike partially pregelatinized corn starch, do not have the characteristics that make the use of spray-dried lactose advantageous, that one skilled in the art would not understand the term "corn starch" used in the '163 patent to include pregelatinized corn starch or Starch 1500, and that in any case, Upjohn did not disclose the use of any kind of corn starch in amounts over 30%.

Mova replies that the "label" given the corn starch in its formulation is irrelevant because Upjohn disclosed the combination of micronized glyburide and one or more pharmaceutically acceptable excipients, and Starch 1500 has been known as a pharmaceutically acceptable excipient since at least the 1970's. Mova also concedes, for purposes of the motion only, that one of ordinary skill in the art would understand "corn starch" to be different from "Pregelatinized Starch, NF (Corn)."

Given this concession, there really is no way the patent specification could be understood to disclose the use of pregelatinized corn starch at all. Even without the concession, however, the fact remains that the '163 patent discloses the use of corn starch as an optional tablet disintegrant employed advantageously at concentrations of up to 30% by weight. It is not disclosed at 46–49% nor are other uses for it or advantages mentioned. Moreover, it is mentioned only as part of a typical formulation under the '163 patent, not as an alternative. The Court does not agree that this constitutes the disclosure of an alternative without claiming it.

The concession that the "label" given the corn starch is unimportant is more relevant to Mova's suggestion that the preamble of the Jepson claim, together with the acknowledgment that different types of corn starch have been known as pharmaceutically acceptable excipients for years, constitutes disclosure of equivalents without claiming them. This argument is subject to objections similar to those discussed above regarding the Jepson preamble as implied admission of the prior art. The Court does not agree that the general terms of the preamble constitute a disclosure of every other combination, particularly in light of the specification's use of the word "certain." Mova adds that Upjohn could have claimed, but did not, 70% "pharmaceutically acceptable excipients including spray-dried lactose." (Mova Reply to Upjohn Opp'n to Mova Mot.Summ.J. at 13.) This argument amounts to saying that Upjohn could and should have claimed the equivalents. Such a requirement would entirely defeat the purpose of the doctrine of equivalents.

Finally, Mova contends that because Upjohn stressed the "criticality" of spray-dried lactose during the prosecution of the patent, it is estopped from claiming that other excipients can be substituted. This argument is not persuasive. The record reveals that Upjohn emphasized the use of spray-dried lactose as distinguished from regular lactose, not from each and every other known pharmaceutically acceptable excipient. This was directed specifically to the PTO's rejection on the grounds that using spray-dried lactose was obvious over using regular lactose.

### III. Conclusion

For the foregoing reasons, Mova's Motion for Summary Judgment (**Dkt. No. 47**) as to the claim of literal infringement is hereby **GRANTED**. As to infringement under the doctrine of equivalents, however, the motion is hereby **DENIED**.

**IT IS SO ORDERED.**