NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1425

BENNETT REGULATOR GUARDS, INC.,

Plaintiff-Appellant,

v.

CANADIAN METER COMPANY, INC.
and AMERICAN METER COMPANY,

Defendants-Appellees.

_____

DECIDED:  June 19, 2006

_____

Before MAYER, SCHALL, and PROST, Circuit Judges.

Opinion for the court filed by Circuit Judge PROST.  Dissenting opinion filed by Circuit Judge MAYER.

PROST, Circuit Judge.

Bennett Regulator Guards, Inc. ("Bennett") sued Canadian Meter Co., Inc. and American Meter Co. (collectively "Meter") alleging that Meter's Splash Guard product infringed claims 1, 2, 5 and 6 of Bennett's U.S. Patent No. 5,810,029 (the "'029 patent").  Meter defended by contending that it already had developed and publicized the Splash Guard prior to Bennett's efforts to obtain a patent and that these acts invalidated the '029 patent by anticipation under 35 U.S.C. § 102(a) and (b).  The district court agreed and granted Meter's motion for summary judgment of invalidity.  On appeal, we find that

genuine issues of material fact exist as to whether Meter's activities relating to the Splash Guard anticipate the '029 patent and, therefore, the grant of summary judgment was improper and we <u>vacate</u> the judgment and <u>remand</u>.

## I.

The '029 patent owned by Bennett issued in 1998 from an application filed June 16, 1995 and claims a spray cover for a natural gas regulator pressure valve. The spray cover prevents the gas regulator valve from failing due to ice formation. Bennett contends that the invention was completely designed as of late July or August 1994.

The defendants are two affiliated companies, Canadian Meter and American Meter, that manufacture gas equipment. One of their products is the Splash Guard protector for gas regulators. On February 2, 2004, Bennett filed an action for patent infringement in the Northern District of Ohio against Meter alleging that Meter's Splash Guard product infringed claims 1, 2, 5, and 6 of the '029 patent. At the district court, Meter raised the defense that the '029 patent was invalid for anticipation under 35 U.S.C. § 102(a) and (b) which state that

[a] person shall be entitled to a patent unless--

(a) the invention was <u>known or used by others in this country</u>, or patented or <u>described in a printed publication in this or a foreign country</u>, before the invention thereof by the applicant for patent, or

(b) the invention was patented or <u>described in a printed publication</u> in this or a foreign country or <u>in public use or on sale in this country</u>, more than one year prior to the date of the application for patent in the United States, or . . . .

35 U.S.C. § 102 (2000) (emphases added). Meter alleged that its own activities relating to the Splash Guard anticipated Bennett's patent. Specifically, in the 1980s, Meter began searching for the cause of a few catastrophic failures of gas regulating valves.

05-1425                                    2

As a result of that research, Meter realized that the old style regulators had malfunctioned when, during freezing conditions, water splashed and subsequently froze onto the screens of the regulators. Canadian Meter then developed a product called the Splash Guard that kept water from splashing up onto the screen and thereby prevented malfunctioning due to ice formation. While Meter never patented its Splash Guard, in the early 1990s, Meter undertook a number of activities relating to its Splash Guard product. These efforts are the factual basis for Meter's theories of anticipation upon which Meter filed a motion for summary judgment of invalidity.[1]

Meter contended that the patent was anticipated by its prior publication and prior offer for sale. The district court did not grant the summary judgment motion on these first two theories (i.e., printed publication and offer for sale) because it concluded Bennett had raised a genuine issue of material fact underlying each of those theories.

The district court did grant the motion for summary judgment as to Meter's last two theories, namely that the patent was anticipated by prior public use and public knowledge. First, Meter contended that, in October 1991, it conducted regulatory testing of the Splash Guard with the Canadian Gas Association ("CGA") in Nebraska City, Nebraska to certify that the Splash Guard met CGA safety standards. The testing was evidenced by affidavits describing the tests, by memos discussing the tests, by the

---

[1]    In this case, the accused infringing device, the Splash Guard, is also the device that allegedly provides the anticipatory use or knowledge. Thus, absent a dispute as to whether the complete Splash Guard device was involved in the anticipatory act, we agree with the district court that "[w]hen the anticipatory reference is the accused product, the Defendant's burden [of showing that the anticipatory reference contains each and every claim element] is satisfied by the Plaintiff's infringement allegations in the Complaint that the accused product embodies the claimed invention." Bennett Regulator Guards, Inc. v. Canadian Meter Co., No. 1:04-CV-177, slip op. at 9 (N.D. Ohio May 10, 2005).

certificate resulting from the CGA testing, and by the test results. Meter contended that the testing was not confidential and was accessible to the public and therefore the Nebraska City testing of the Splash Guard constituted an anticipatory public use under 35 U.S.C. § 102(a) and (b).

Second, Meter contended that the Splash Guard was publicly known in the United States, and thus anticipated under 35 U.S.C. § 102(a). In support, Meter submitted statements from employees attesting to their knowledge of the Splash Guard product demonstrating, according to Meter, that the Splash Guard was known in the United States. The statements also state that Meter's knowledge about the Splash Guard was publicly accessible. Furthermore, Meter submitted a letter sent to the Bay State Gas Company, another letter to the Vermont Gas Company, and an inter-office memo. The letters tell the gas companies that Meter would be "pleased to offer any information [they] may require" regarding the Splash Guard. The inter-office memo asks American Meter to relay customer feedback regarding the Splash Guard. Meter contended that these documents evidence that American Meter's knowledge about the Splash Guard was publicly accessible and therefore the '029 patent is invalid due to anticipation by public knowledge under 35 U.S.C. § 102(a).

As to these last two theories, the district court found that Meter presented clear and convincing evidence that the Splash Guard was both publicly known and used prior to the earliest potential date of invention for the '029 patent. First, the district court found that the CGA 1991 testing of the Splash Guard in Nebraska City, Nebraska, was a corroborated public use. Reinforcing the testimony relating to the testing, the district court held that "the certification document not only demonstrates public use, but also

corroborates the other documents and statements referencing the Nebraska City testing." Bennett Regulator, slip op. at 13. Second, as to public knowledge, the district court held that "[t]here can be no dispute that the claimed invention, embodied in the Splash Guard product, was known 'in this country'. [Bennett] cannot argue that Defendant American Meter lacked knowledge of the accused product. . . . The issue, therefore, is whether the Defendants' knowledge . . . was 'public.'" Id., slip. op. at 11. The district court found that the letters from Bay State Gas Company and Vermont Gas Company along with an inter-office memo demonstrated that Meter's knowledge about the Splash Guard was not secret or confidential. The district court concluded that "the corroborative documentary evidence of public knowledge . . . is substantial and constitutes clear and convincing evidence of invalidity." Id., slip. op. at 14. As a result, the district court granted Meter's motion for summary judgment of invalidity. Bennett appealed and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II.

We review a district court's grant of summary judgment of invalidity de novo. Baxter Int'l, Inc. v. COBE Labs., Inc., 88 F.3d 1054, 1058 (Fed. Cir. 1996) (citing Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994)). "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Id. at 1057 (citing Fed. R. Civ. P. 56(c); Johnston v. IVAC Corp., 885 F.2d 1574, 1576-77 (Fed. Cir. 1989)). "In determining whether there is a genuine issue of material fact, we view the evidence in the light most favorable to the party opposing the motion, with doubts resolved in favor of the nonmovant." Id. (citing Transmatic, Inc. v. Gulton Indus., Inc., 53 F.3d 1270, 1274 (Fed.

Cir. 1995)). "Challenges to the validity of claims, whether regularly issued [or] issued after a reexamination pursuant to 35 U.S.C. §§ 301-307 . . . must meet the clear and convincing standard of persuasion." Superior Fireplace Co. v. Majestic Prods. Co., 270 F.3d 1358, 1367 (Fed. Cir. 2001) (citing Kaufman Co. v. Lantech, Inc., 807 F.2d 970, 973-74 (Fed. Cir. 1986)).

Bennett appeals the granting of summary judgment for anticipation under both public use and public knowledge. Under § 102(a), "in order to invalidate a patent based on prior knowledge or use, that knowledge or use must have been available to the public." Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368, 1370 (Fed. Cir. 1998). Similarly, "when an asserted prior use is not that of the applicant, § 102(b) is not a bar when that prior use or knowledge is not available to the public." Id. at 1371. Thus, under either § 102(a) or § 102(b), the prior use must be a public use and under § 102(a) the knowledge must be public knowledge. Bennett argues that the district court erred because genuine issues of material fact exist as to whether there was an invalidating public use of the Splash Guard and whether there was invalidating public knowledge of the Splash Guard. We address each of these issues in that order.

**A.**

Bennett contends that, as to the public use of the Splash Guard, it raised a genuine issue of fact as to the public nature of the Nebraska City testing and that there is a genuine issue of fact as to whether the product tested in Nebraska City possessed each and every element of the asserted claims in the patent. In response, Meter contends that its testing of the Splash Guard in Nebraska City with a team from the CGA was not confidential. Meter contends that the CGA was under no obligations to

keep information about the Splash Guard secret and therefore the testing constitutes a public use under § 102(a) or (b). Further, Meter contends that the complete Splash Guard was tested in Nebraska City and therefore there is no question as to the identity of the public use in regards to the claim elements.

We conclude that there exists a genuine issue of material fact as to the public nature of the testing in Nebraska City. As pointed out by Bennett, a Vice President from Meter testified that "I believe in my opinion, the Canadian Gas Association views [the CGA testing] as being proprietary." Read in the light most favorable to Bennett, this testimony raises a genuine issue of material fact as to the publicness of the Nebraska City testing.

Furthermore, there exists a genuine issue of material fact as to whether the device used in the Nebraska City testing contained each and every element of the asserted claims. In particular, there is a question as to whether the tested device included the baffling means element required by the claims. Bennett highlights that an inter-office memo by Meter stated that the Nebraska City tests were performed "with the prototype . . . vent shield, and no device or screen installed." Bennett argues that this memo creates a genuine issue of fact as to the identity of the tested device. Bennett points to Meter's drawings it submitted to the CGA. In those drawings, the "Vent Shield" is only the outer skirt of the Splash Guard without the baffling insert. Because the memo suggests that only the Vent Shield was tested, Bennett argues that the memo demonstrates that the device tested in Nebraska City cannot anticipate as a prior use because the tested device did not contain a baffling means as required by the claims. Although it is not clear what device was tested, the memo does create a genuine issue

of fact as to whether the device tested in Nebraska City met the claim limitation requiring "a baffle means." Thus, the Nebraska City testing cannot, on summary judgment, support a judgment of invalidity.

**B.**

There is also a genuine issue of fact underlying Meter's theory of anticipation via 35 U.S.C. § 102(a) public knowledge. There is little dispute that American Meter knew about the Splash Guard. In other words, the Splash Guard was known in the United States prior to the '029 invention date because American Meter certainly knew about its own product. Rather, the parties dispute whether that knowledge was accessible to the public as required by our caselaw. In support of its contention that its knowledge was publicly known, Meter submitted affidavits and testimony describing its efforts at contacting customers in the United States regarding the Splash Guard highlighting that it did not attempt to keep information about the Splash Guard secret and confidential from the public.

As described above, under § 102(a), knowledge must be publicly accessible. In support of its grant of summary judgment of invalidity as to public knowledge, the district court primarily relied on two pieces of evidence. First, the district court relied on a memorandum sent from Canadian Meter to American Meter that referred to the transfer of forty units of the Splash Guard product and that asked for "future requirements and customer feedback" as to the Splash Guard. Because it referenced customer feedback in regards to the Splash Guard, Meter argues that this memorandum shows that Meter was making its knowledge of the Splash Guard publicly accessible. Second, in March of 1992 and April of 1994, Meter sent letters to the Vermont Gas Company and to Bay

State Gas Company respectively, telling these gas companies of the Splash Guard. Both letters concluded by stating that the gas companies could contact Meter for "any information you may require" about the Splash Guard. Meter argues that these letters evidence that it was not keeping the Splash Guard secret and Meter's knowledge about the Splash Guard was accessible to the public. Meter argues that the district court properly granted the motion for summary judgment based on these documents.

However, in our view, there does exist a genuine issue of fact as to whether Meter's letters and memos establish that Meter's knowledge was accessible to the public. As argued by Bennett, the reference in the letters to "any information you may require" or the reference to customer feedback could be taken to mean a wide variety of things relating to the Splash Guard—"prices, product availability, or lack thereof, test results, expected standards to be enacted in the United States, etc." Certainly the letter and memo do suggest that Meter intended to publicize the Splash Guard but, in the light most favorable to Bennett, it does not establish that Meter intended to make its technical knowledge about the structure and function of the Splash Guard publicly accessible. One can publicize that a new product exists while still keeping an enabling disclosure of the structure and function of the product secret. Thus, when viewed in the light most favorable to Bennett, the internal memorandum asking for "customer feedback" or the letters to customers offering "any information you may require" do not establish by clear and convincing evidence that Meter's knowledge about the Splash Guard was accessible to the public. Rather, there exists a genuine issue of material fact as to the public accessibility of Meter's knowledge of the Splash Guard and it cannot properly support summary judgment of invalidity.

**III.**

When viewed in the light most favorable to Bennett, summary judgment was not properly granted. There exist genuine issues of material fact as to the confidentiality of the Nebraska City testing and the identity of the product tested there that preclude a finding of a public use. Further, when all inferences are drawn in favor of Bennett, the memorandum and letters are not enough to establish that Meter's knowledge of the Splash Guard was accessible to the public. Therefore, we find the grant of summary judgment was improper and we vacate the judgment and remand for further proceedings consistent with this opinion.

NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1425

BENNETT REGULATOR GUARDS, INC.,

Plaintiff-Appellant,

v.

CANADIAN METER COMPANY, INC.
and AMERICAN METER COMPANY,

Defendants-Appellees.

MAYER, Circuit Judge, dissenting.

Because the record establishes by clear and convincing evidence, even after all reasonable inferences are drawn in Bennett's favor, that Meter's knowledge of its Splash Guard product was available to the public in this country prior to the critical date of Bennett's invention, see Woodland Trust v. Flowertee Nursery, Inc., 148 F.3d 1368, 1370 (Fed. Cir. 1998) (setting forth the standard for invalidating a patent based on public knowledge under 35 U.S.C. § 102(a)), I dissent.

In order to provide the appropriate context for this conclusion, some additional facts are necessary.  To begin, Meter alleges, and Bennett does not dispute, that it attached a sketch of its device to the letters it sent to the Vermont Gas Company and the Bay State Gas Company.  Indeed, the attachment is specifically referenced in the March 1992 Vermont letter: "A sketch of these devices has also been attached for your

reference." The attachment is the same drawing included in the April 1992 "Quality Communique" that Meter sent to Canadian gas companies and American Meter offices in the United States, announcing regulatory approval of its device. The "communique" describes this sketch as "an engineering drawing . . . [showing] the size and location of the new Canadian Meter splash guard attached to a 1213B Domestic Regulator." In addition to demonstrating the position and relative size of the device in a regulator, it provides a view inside the device, showing the placement and relative size of the vent screen and the guard, or "baffling," insert. Along with the molded-plastic shell or casing, the screen and the guard are the only additional elements in the device. While I agree with the trial court that questions of material fact exist as to whether this document is enabling, and therefore an invalidating printed publication under 35 U.S.C. §§ 102(a) or (b), its distribution to American and Canadian gas companies establishes that by 1994, far from attempting to keep details about its device secret, Meter was actively publicizing them.

Next, Meter alleges that during sales tours in 1992-93, it showed its device and informational literature to American gas companies in the Atlanta and Great Lakes regions. Bennett Regulator Guards, Inc. v. Canadian Meter Co., No. 1:04-CV-177, 2005 WL 1123524, at *2 (N.D. Ohio May 10, 2005). To corroborate this activity, Meter introduced a July 1992 cover letter attached to 40 samples of the device. The letter and the devices were sent by Canadian Meter's Quality Assurance and Technical Support Manager (the employee who designed the Splash Guard product) to American Meter's Vice President and General Manager of the North American Service Group. The American Meter employee who testified that he conducted the Great Lakes sales tours

was copied on the letter. Moreover, it concluded, "[p]lease advise of future requirements and customer feedback." While this evidence does not conclusively prove that Meter did in fact show its device to American gas companies in 1992-93, it demonstrates that Meter intended to show its product to the public, i.e., that its product was publicly available and not secret.

In the abstract, it is true that, "[o]ne can publicize that a new product exists while still keeping an enabling disclosure of the structure and function of the product secret." Ante at 9. Here, however, corroborated testimony shows at a minimum that Meter disclosed the structure and function of its device in the United States and intended to distribute samples of its product in the United States. Plainly, its invalidating knowledge was available to the public.