NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALEKSANDR L. YUFA,**
*Plaintiff-Appellant*

**v.**

**TSI, INCORPORATED,**
*Defendant-Appellee*

---

2015-1063, 2015-2007, 2016-1134

---

Appeals from the United States District Court for the Central District of California in No. 8:12-cv-01614-FMO-JCG, Judge Fernando M. Olguin.

---

Decided: June 14, 2016

---

ALEKSANDR L. YUFA, Colton, CA, pro se.

COURTLAND COLLINSON MERRILL, Anthony Ostlund Baer & Louwagie P.A., Minneapolis, MN, for defendant-appellee. Also represented by DANIEL RYAN HALL; BRUCE HOWARD LITTLE, Lindquist & Vennum PLLP, Minneapolis, MN.

---

Before NEWMAN, DYK, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

In three separate appeals, Appellant Dr. Aleksandr L. Yufa challenges various decisions of the United States District Court for the Central District of California.[1] For reasons discussed below, we solely address issues raised in Appeal No. 2015-1063. In that appeal, Dr. Yufa challenges the district court's summary judgment decision that Appellee TSI, Incorporated ("TSI") did not infringe U.S. Patent Nos. 5,767,967 ("the '967 patent"), 5,946,091 ("the '091 patent"), 6,034,769 ("the '769 patent"), and 7,439,855 ("the '855 patent") (collectively, "the patents-in-suit"). *See Yufa v. TSI, Inc.*, No. 8:12-cv-01614-FMO-JCG (C.D. Cal. Sep. 22, 2014) (J.A. 2–28). We affirm.

## BACKGROUND

The patents-in-suit relate to methods and devices for counting and measuring particles in gases and fluids. Dr. Yufa raises arguments in his opening brief pertaining only to the district court's grant of summary judgment of non-infringement for the '769 and '855 patents. Thus, only the '769 and '855 patents are at issue in this appeal. The '769 patent claims a method and a device for counting and measuring particles without using a reference voltage to determine the size of the detected particles. The '855 patent is directed to a method and an apparatus for remotely controlling an environmental monitoring system.

---

[1] In September 2015, this court consolidated Appeal Nos. 2015-1063 and 2015-1007. *See Yufa v. TSI, Inc.*, No. 2015-1063, Docket No. 40 at 2 (Fed. Cir. Sept. 29, 2015). In November 2015, this court further consolidated Appeal Nos. 2015-1063, 2015-1007, and 2016-1134. *See Yufa v. TSI, Inc.*, No. 2015-1063, Docket No. 51 at 1 (Fed. Cir. Nov. 11, 2015).

### I. The '769 Patent

The '769 patent is entitled "Method and Device for Counting and Measuring Particles" and discloses "devices and instruments for particle quantity counting and particle size measuring by light or laser beam." '769 patent col. 1 ll. 6–7.

The prior art's method of counting and measuring particles utilized "light scattering focalizing methods," which are based "on the collection of the scattered light." *Id.* col. 2 ll. 5–6. Particles are introduced into a laser beam at a first focal point, which is then "collect[ed] and focalize[d] at the second focal point [] [via mirrors or optics], where a light detector is placed and intended for scattered light detection." *Id.* col. 2 ll. 10–13. "The amplified detected signal is compared with the predetermined reference voltage for the particle size qualifying." *Id.* col. 3 ll. 12–14. However, using this method "creates [] background (light noises) inside such devices, creating . . . incorrectness of the resulting information about the measured environment." *Id.* col. 2 l. 66–col. 3 l. 1.

The '769 patent discloses "[a]n improved method of counting and measuring particle[] forms [through a] direct detection process, eliminating the light scattering detection principles." *Id.* col. 4 ll. 19–21. "A light or laser beam intersects a particle flow inside a light detecting system in the light detection means area." *Id.* col. 4 ll. 25–26. "The signals, detected by light detection means through an analog-digital subsystem[,] follow to a processing system for signal processing and information displaying." *Id.* col. 4 ll. 27–30. "When the particles of the particle flow intersect the light beam, the intensity of the light beam on the light detection means [] will be less than at the time when the particles are missing, because the presence of a particle in the light beam is an obstruction for the light in the direction to the light detection means []." *Id.* col. 5 ll. 20–25. "The bigger the particle,

the less light intensity on the light detection means []."
*Id.* col. 5 ll. 25–26.

Independent claim 1 is illustrative and recites, in relevant part:

> A method for counting and measuring particles illuminated by a light beam and including the steps of:

> providing by a light detecting system an output which is effectively indicative of a size of said particles intersecting said light beam within a particle monitoring region of said light detecting system so that said particles are monitored within said particle monitoring region, and wherein a light, created by [the] *an* intersection of said particles with said light beam, is proportional to said output:

> amplifying said output by an amplifying means;

> converting each amplified signal to a digital form pulse [having an adequate duration with said output] *without using a reference voltage to convert each said amplified signal, wherein said digital form pulse has a duration which is adequate to a baseline duration of said output of said light detecting system.*

Ex Parte Reexamination Certificate to U.S. Patent No. 6,034,769 (Issued Feb. 23, 2010) ("First Reexamination Certificate") col. 1 l. 61–col. 2 l. 10 (brackets designate text removed from the patent and italics designate text added to the patent).[2]   Claims 1, 4, and 6 all require

---

[2]   The '769 patent underwent three ex parte reexaminations.  During the first reexamination, claims 2 and 3 were canceled; claims 1, 4, and 6 were determined to be patentable as amended; and claim 5, which depends from

conversion of the amplified signal "without using a reference voltage." *See id.* col. 2 ll. 6–7 (claim 1); *id.* col. 2 ll. 52–58 (claim 4); *id.* col. 4 ll. 1–8 (claim 6).

## II. The '855 Patent

The '855 patent is entitled "Method and Wireless Communicating Apparatus for Analysis of Environment" and discloses a method and a "wireless communicating apparatus for analysis of [the] environment including a wireless communication system/means, intended for wireless communication . . . and wireless control of at least one of a plurality of environment monitoring systems . . . ." '855 patent col. 4 ll. 59–66. The wireless "control signal can provide, for example, [the] possibility to switch 'on/off', to switch 'run/stop', to select and change the particle counting and measuring channels, to provide remote sensor diagnostics, to switch the mode [] from particle counting and measuring to concentration determination . . . , etc." *Id.* col. 2 l. 67–col. 3 l. 7. Wireless communication with and control of the environmental monitoring systems allows users "to eliminate the presence of the operator in the clean rooms," *id.* col. 3 ll. 52–53, as well as eliminate the use of "long wire (long cable) connections," which "can create interference [via electromagnetic noise] . . . thereby limiting the sensitivity and efficiency of the environmental analyzers," *id.* col. 1 ll. 58–63.

---

amended claim 4, was determined to be patentable. *See* First Reexamination Certificate col. 1 ll. 52–59. The second and third reexaminations confirmed the patentability of claims 1, 4, 5, and 6. *See* Ex Parte Reexamination Certificate to U.S. Patent No. 6,034,769 (Issued Apr. 5, 2011) col. 2 ll. 4–5; Ex Parte Reexamination Certificate to U.S. Patent No. 6,034,769 (Issued June 19, 2012) col. 2 ll. 4–5.

Independent claim 1 is illustrative and recites, in relevant part:

A method for analysis of an environment monitored by a ray or a light beam, said method, providing a wireless communication, comprises the steps of:

forming in a mobile control system at least one of a plurality of control signals, which provide at least one of a turning-on, turning-off, and/or switching of modes of operation of an environment monitoring system;

converting in said mobile control system said at least one of said plurality of control signals to the form for a wireless transmission;

wireless transmitting said at least one of said plurality of control signals to said environment monitoring system.

*Id.* col. 17 ll. 23–34. All of the independent claims require the "wireless transmitting" of "control signals" to an "environment monitoring system." *See id.* col. 17 ll. 33–34 (claim 1); *id.* col. 18 ll. 44–45 (claim 5); *id.* col. 19 ll. 27–29 (claim 8). Additionally, the independent claims all disclose substantially the same claim limitations. *Compare id.* col. 17 l. 23–col. 18 l. 14 (claim 1), *with id.* col. 18 l. 34–col. 19 l. 5 (claim 5), *and id.* col. 19 l. 20–col. 20 l. 35 (claim 8).

### III. TSI's Accused Products

"TSI manufactures and sells products used to determine air quality by evaluating the size of particles in the air." J.A. 280 (citation omitted). Dr. Yufa alleges that TSI's Non-Optical Devices, Pulse Height Detection Devices, Pulse Integration Devices, and other products (collectively, the "Accused Products") infringe the patents-in-suit. J.A. 39–58 (Dr. Yufa's Complaint).

The Accused Products can be grouped into four categories: (1) Non-Optical Devices "that count[] and measure[] particles by utilizing diffusing charging of sample particles, followed by detection of the charged aerosol using an electrometer,"[3] J.A. 310 ¶ 14 (declaration of TSI's engineering manager, Ricky Holm); (2) Pulse Height Detection Devices that "detect the intensity or amount of light scattered off a particle to measure amplitude or 'height' of the voltage pulse . . . to infer particle size,"[4] J.A. 311 ¶ 14; (3) Pulse Integration Devices that "measure particle size by integrating the output signal from the photodetector over a period of time to calculate a pulse 'area' instead of pulse amplitude,"[5] J.A. 312 ¶ 14; and (4) other products.[6]

## IV. Proceedings

---

[3]    Non-Optical Devices include the AEROTRAK Nanoparticle Aerosol Monitor—i.e., the AEROTRAK 9000. J.A. 310 ¶ 14.

[4]    Pulse Height Detection Devices include: AEROTRAK Handheld Particle Counters 9303, 9306-01, 9306-02, 9306-V; AEROTRAK Portable Particle Counters 3306, 9110, 9310-01, 9350-01, 9510-01; AEROTRAK Remote Particle Counters 7110, 7201, 7301, 7301-P, 7310, 7501, 7510; Optical Particle Sizer 3330; and DustTrak. J.A. 311 ¶ 14.

[5]    Pulse Integration Devices include: AEROTRAK Handheld Particle Counters 9306-03, 9306-04, 9306-V2; AEROTRAK Portable Particle Counters 9310-2, 9350-02, 9500-1, 9510-2, 9550-02, 9350-3; and BIOTRAK Real-Time Viable Particle Counter 9510-BD. J.A. 312 ¶ 14.

[6]    Other products include: TSI's Facilities Management System ("FMS") software; Model 3800 Aerosol Mass Spectrometers, Particle Size Selector 376060, Models 3321 and M32-01. J.A. 285 (citations omitted).

In September 2012, Dr. Yufa filed suit against TSI, alleging infringement of certain claims of the patents-in-suit. In August 2013, TSI filed a joint claim construction statement, which was adopted by the district court. The remaining disputed terms were construed by the district court in a September 2014 Order. In the same Order, the district court granted TSI's Motion for Summary Judgment, finding the Accused Products do not infringe the asserted claims of the patents-in-suit.

Dr. Yufa timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (2012).

## DISCUSSION

In his opening brief, Dr. Yufa concedes that he "does not raise . . . the issue(s) related to [Appeal Nos.] 2015-2007 and 2016-1134." Appellant's Br. 1–2. The issues in those appeals concern the district court's decisions to award attorney fees and costs to TSI, J.A. 1721–30, and deny Dr. Yufa's Motion for Relief under Rule 60(b)(3) of the Federal Rules of Civil Procedure, J.A. 1769–70. In any case, Dr. Yufa has not preserved any argument related to these issues because he did not raise them in his opening brief. *See Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) ("An issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived.").

Thus, we are left to address only the issues raised in Appeal No. 2015-1063. In Appeal No. 2015-1063, Dr. Yufa argues the district court erred in granting TSI's motion for summary judgment of non-infringement of the

'769 and '855 patents.[7] We address these arguments below.

## I. Standard of Review and Legal Framework for Summary Judgment of Non-Infringement

This court reviews summary judgment decisions under the law of the regional circuit. *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1349 (Fed. Cir. 2005). Applying the law of the Ninth Circuit, this court reviews the grant of summary judgment de novo. *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the

---

[7] In Appeal No. 2015-1063, Dr. Yufa also contends that the district court erred in granting the motion for summary judgment of non-infringement as to the '967 and '091 patents. Appellant's Br. 20–21. These contentions are not discussed in the argument portion of Dr. Yufa's opening brief and are waived. *See In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) (holding that a party waives an argument that it raises in the background section of its brief, but not in the argument section). Even if this court were to exercise its discretion and consider arguments that were not properly raised in the opening brief, *see SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 n.9 (Fed. Cir. 2006), we would still find waiver for failure to present a developed argument, *see id.* at 1320 ("When a party includes no developed argumentation on a point . . . we treat the argument as waived under our well established rule." (internal quotation marks and citation omitted)).

parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982) (citation omitted). "When determining whether a genuine issue of material fact remains for trial, we must view the evidence and all inferences therefrom in the light most favorable to the non-moving party and may not weigh the evidence or make credibility determinations." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1117–18 (9th Cir. 2009) (citation omitted). However, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

To prevail on its summary judgment motion, the moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103 (citations omitted). "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id.* (citation omitted).

## II. The District Court Properly Granted Summary Judgment

Dr. Yufa alleges that TSI's Accused Products infringe the '769 and '855 patents. We review questions regarding patent infringement consistent with our precedent. *See, e.g., Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1273 (Fed. Cir. 2004). "The determination of infringement requires a two-step analysis: (1) a proper

construction of the claim to determine its scope and meaning, and (2) a comparison of the properly construed claim to the accused device or process." *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1572 (Fed. Cir. 1994) (citation omitted). Claim construction is not an issue in this case. "With regard to the second step of the infringement analysis, the patentee must prove that the accused device embodies every limitation in the claim, either literally or by a substantial equivalent." *Id.* (citation omitted).

## A. The '769 Patent

The district court granted summary judgment of non-infringement as to the '769 patent. In doing so, the district court reviewed Dr. Yufa's claims of infringement against TSI's Non-Optical and Optical Devices,[8] the claims of the '769 patent, and the evidence offered by both TSI and Dr. Yufa. *See generally* J.A. 14–21. The district court applied the proper standards in granting summary judgment of non-infringement for TSI's Accused Products. It concluded that there was insufficient proof to support a reasonable finding that any of the Accused Products met every limitation of the asserted claims of the '769 patent. We agree with the district court that Dr. Yufa has failed to raise a triable issue with respect to the Accused Products.

As to TSI's Non-Optical Devices, the district court properly held that there was no evidence demonstrating

---

[8] Dr. Yufa alleged that "various AEROTRAK Handheld Particle Counters 930, AEROTRAK Nanoparticle Aerosol Monitor 9000, AEROTRAK Portable Particle Counters, AEROTRAK Remote Particle Counters, BIOTRAK Real-Time Viable Particle Counter 9510-BD, Optical Particle Sizer 3330, DustTrak, Nanoparticle Sizer 3910, and [FMS] infringe the '769 patent." J.A. 16 (internal quotation marks, footnote, and citations omitted).

that these products use optical, light beam technology as claimed in the '769 patent. The district court relied on Mr. Holm's declaration, which explained that "TSI's Non-Optical [Devices] do not actually use the optical, light-beam technology involved" in the '769 patent. J.A. 17 (internal quotation marks and citation omitted). The district court further concluded that TSI's Non-Optical Devices did not infringe under the doctrine of equivalents, observing that Dr. Yufa did "not put forth any evidence to demonstrate that there is an 'insubstantial' difference between illuminating particles using light and the method employed by the accused [N]on-[O]ptical [Devices]." J.A. 18.

As to TSI's Optical Devices, the district court properly held that there was no evidence that demonstrates these products convert amplified signals to digital signals without using a reference voltage, as claimed in the '769 patent. The district court found that Dr. Yufa failed "to raise a genuine issue of material fact that the use of pulse width modulation necessarily satisfies the 'reference voltage' claim limitation." J.A. 20 (footnote omitted). The district court reviewed the exhibits relied upon by Dr. Yufa to establish a dispute of material fact and found them unavailing. For example, the "Introduction To Interfaces Used in Facility Monitoring Systems" was "a general reference document that does not inform the operation of the accused [O]ptical [Devices]" and, further, it did "not even appear to be a TSI document." J.A. 20 (citation omitted). Moreover, the "Facility Monitoring System Design Recommendations" was "a reference document providing 'example[s]' of potential 'monitoring system' designs" that "does not discuss the use of 'pulse width modulation' or conversion without a reference voltage." J.A. 20 (citations omitted). The district court credited Mr. Holm's declaration, which explained that "'[n]one of TSI's Optical Devices convert analog signals to digital without use of a reference voltage.'" J.A. 20 (quot-

ing J.A. 316 ¶ 24). Finally, the district court correctly determined that Dr. Yufa's assertions that "the Series 3800 or LT1016" infringe the '769 patent were, inter alia, similarly unsupported. J.A. 21.

Dr. Yufa argues the district court erred in granting summary judgment of non-infringement as to the '769 patent because his "opposing papers specifically . . . dispute and present evidence[] . . . [that] TSI's Optical Device[s] (Pulse Integration Device[s]/particle counter[])[,e.g.,]–'Model 3800 [Aerosol Time-of-Flight Mass Spectrometer ('ATOFMS')] . . . convert the analog signal to a digital form pulse without the use of the reference voltage in conversion." Appellant's Br. 29–30. Dr. Yufa also contends that TSI's Accused Products "use Pulse Width Modulation/Modulators [components 'U2' and 'U3' – LT1016CS8 in TSI's 'Schematic Diagram-Timer, Model 3800 ATOFMS']," *id.* at 53 (brackets in original) (citations omitted), and that these pulse width modulators do not "use the reference voltage [in contrast to the pulse amplitude (height) method, which uses the reference voltage (e.g., in the TSI's 'Pulse Height Devices')]," *id.* at 46–47 (brackets in original). To further support his assertion that TSI uses pulse width modulation, Dr. Yufa relies upon (1) the document entitled "Introduction To Interfaces Used in Facility Monitoring Systems," which was rejected by the district court, and (2) TSI's Answers to Dr. Yufa's First Set of Interrogatories from a related litigation. *Id.* at 30–31.

Dr. Yufa's arguments as to the Optical Devices, like many of his other arguments on appeal, fail to demonstrate that there was a genuine issue of material fact for trial. Dr. Yufa is incorrect in his categorization of the evidence that he relies upon in his opening brief. The district court determined that the document entitled "Introduction To Interfaces Used in Facility Monitoring Systems" was "a general reference document that does not inform the operation of the accused [O]ptical [Devices]"

and, further, it did "not even appear to be a TSI document." J.A. 20 (citation omitted). Dr. Yufa has not provided any record evidence that would demonstrate TSI was the author of this document or that it relates to the Accused Products. Dr. Yufa merely offers contradictory assertions, which are insufficient to survive summary judgment. *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1337 (Fed. Cir. 2010) ("The requirement that the nonmovant must set forth specific facts means that mere denials or conclusory statements are insufficient to survive summary judgment." (internal quotation marks, brackets, and citation omitted)).

Additionally, Dr. Yufa relies on statements made by TSI in response to Dr. Yufa's interrogatories from related litigation in the United States District Court for the Northern District of California involving U.S. Patent No. 6,346,983 ("the '983 patent"), a patent related to the patents-in-suit in the present case. *See Yufa v. TSI, Inc.*, No. 09-CV-01315-KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014). In the present appeal, Dr. Yufa asserts that "TSI confirmed under oath the use of Pulse Width Modulation." Appellant's Br. 45; *see* J.A. 270–71 (TSI's Answers to Dr. Yufa's First Set of Interrogatories, where TSI explained that "[t]o the extent that [] TSI uses pulse width modulation in any of its products, it does so in a manner that does not infringe the '983 [p]atent."). In resolving the appeal of this related litigation, we rejected Dr. Yufa's argument that TSI's response reflects an admission of infringement, holding that the response "does not constitute an admission. Rather, it is a hypothetical reply that merely serves to address TSI's stance on whether its products infringe the '983 patent. Thus, Dr. Yufa cannot employ TSI's response to interrogatory No. 3 as illustrative of an admission." *Yufa v. TSI, Inc.*, 600 F. App'x 747, 751 (Fed. Cir. 2015) (unpublished). Dr. Yufa's reliance on TSI's response to the first set of interrogatories fails to account for this determination or ex-

plain how it applies differently to the patents-in-suit and, therefore, does not present specific facts sufficient to survive summary judgment. *See Enzo Biochem*, 599 F.3d at 1337.

Finally, Dr. Yufa further contends that the district court erred in granting summary judgment of non-infringement as to TSI's "Series 3800 and LT1016" products on the basis of insufficient evidence to establish a genuine issue of material fact "because . . . the [d]istrict [c]ourt cannot 'assess' . . . the technical issues . . . ([e.g.,] such as conversion without reference voltage . . . ) used in [] TSI's [A]ccused [P]roducts . . . ." Appellant's Br. 53–54. However, Dr. Yufa is incorrect in his assertion. The district court determined Dr. Yufa's "assertions regarding . . . the Series 3800 and LT1016[] are inadequately supported." J.A. 21 (citing *Yufa v. Lockheed Martin Corp.*, 575 F. App'x 881, 887 (Fed. Cir. 2014) (unpublished)). The district court also faulted Dr. Yufa for failing to timely assert infringement contentions with respect to those products, observing that Dr. Yufa "refuse[d] to identify which of [TSI's] products or systems infringe[d] each patent-in-suit. Instead, [Dr. Yufa] simply reference[d] his [C]omplaint." J.A. 1063. In his opening brief, Dr. Yufa offers nothing more than mere assertions that series "'3800 and LT1016' are [] admissible [] evidentiary material facts." Appellant's Br. 55. His unsupported assertions are insufficient to defeat summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (a party may not avoid a motion for summary judgment by resting on "conclusory allegations of the complaint" or by answering "with conclusory allegations of an affidavit." (citation omitted)).

## B. The '855 Patent

The district court granted summary judgment of non-infringement as to the '855 patent. The summary judgment was based on the district court's determination that

Dr. Yufa "failed [to] put forth evidence to dispute TSI's evidence that the accused products only perform wireless monitoring in conjunction with the FMS." J.A. 28. In reaching that conclusion, the district court reviewed Dr. Yufa's claims of infringement against (1) the products accused of infringing the '855 patent;[9] (2) the claims of the '855 patent; and (3) the evidence offered by both TSI and Dr. Yufa. *See generally* J.A. 24–28.

As to TSI's products accused of infringing the '855 patent, the district court properly held that there was no evidence that demonstrates that TSI's sensors can be wirelessly controlled as claimed in the '855 patent. The district court determined that "the evidence is undisputed that the sensors still require manual adjustment." J.A. 27 (footnote and citation omitted). In reaching this determination, the district court credited the declaration of TSI's systems engineer, Sreenath Avula, which explained that "TSI's [FMS] requires manually adjusting the controls at the sensor by, for example, setting the sample time, and then changing the same parameters in the [FMS] software accordingly. In other words, the user must manually control the sensors, they are never remotely or wirelessly controlled." J.A. 26 (internal quotation marks and citation omitted).

The district court also rejected Dr. Yufa's reliance on the document entitled "Facility Monitoring System Design Recommendation" as evidence demonstrating that TSI's sensors are not subject to manual control. J.A. 26–27. The district court observed that Dr. Yufa did not "put forth sufficient evidence that the accused TSI products

---

[9]    Products accused of infringing the '855 patent include: "various AEROTRAK Remote Particle Counters, [FMS], and AEROTRAK Portable Particle Counters." J.A. 25–26 (internal quotation marks, footnote, and citations omitted).

wirelessly transmit 'control signals.' Rather, the cited evidence indicates that the 'sensors' are connected by wired network to a 'monitoring [Local Area Network].'" J.A. 27 (citation omitted). The district court also determined that Dr. Yufa's "citation to general documents, such as a website description of the 'AEROTRAK Remote Particle Counter 7301,' is insufficient to raise a genuine issue of material fact that the accused products wirelessly transmit 'control signals.'" J.A. 27–28 (citations omitted).

Dr. Yufa argues that the district court erred in granting summary judgment of non-infringement as to the '855 patent because "TSI's own schematic diagrams" conflict with TSI's statements that "the user must manually control the sensors, they are never remotely or wirelessly controlled." Appellant's Br. 56 (internal quotation marks and citations omitted). The schematics conflict, according to Dr. Yufa, because they show that "TSI's [FMS] provide the wireless monitoring and control of the remote particle counters via TSI's Wireless network connection." *Id.* (internal quotation marks and citation omitted). Dr. Yufa further contends that "the remote particle counters (sensor), according to [] TSI's documents[,] do not have any organs for manual control at all . . . . The [FMS's] component – 'Power over Ethernet (POE) Managed Switch' provides the claimed wireless control, i.e.: 'turning-on' and 'turning-off' of the remote particle counters (sensors)." *Id.* at 57–58 (citing J.A. 245, 248, 250).

As with his arguments to the '769 patent, we find that Dr. Yufa's arguments as to the '855 patent fail to demonstrate that there is a genuine issue of material fact for trial. Dr. Yufa has not offered any additional evidence to demonstrate that TSI's FMS provides for wireless control of the remote particle sensors and thus do not require manual adjustment. *See Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d 1341, 1353 (Fed. Cir. 2001) ("The party opposing the [summary judgment] motion must point to an evidentiary

conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient." (brackets in original) (internal quotation marks and citation omitted)). Rather, Dr. Yufa appears to contest the credibility of Mr. Avula's declaration that the sensors "are never remotely or wirelessly controlled." J.A. 330 ¶ 9. Such conclusory assertions are not sufficient to overcome a motion for summary judgment. *See TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1158–59 (Fed. Cir. 2004) ("Summary judgment should not be denied simply because the opposing party asserts that the movant[']s witnesses are not to be believed. However, summary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of the movant[']s witnesses." (citations omitted)).

## CONCLUSION

We have considered Dr. Yufa's remaining arguments and find them unpersuasive. Accordingly, the decisions of the United States District Court for the Central District of California are

## AFFIRMED

### COSTS

Each party shall bear its own costs.